BOARD OF COUNTY COMMISSIONERS OF DELAWARE COUNTY, APPELLEE, *v.* CITY OF COLUMBUS, DEPT. OF RECREATION AND PARKS ET AL., APPELLANTS. (Two cases.)

(Nos. 84AP-964 and -970— Decided June 6, 1985.)

*W. Duncan Whitney,* prosecuting attorney, for appellee.

*Gregory S. Lashutka,* city attorney, and *Daniel W. Drake,* for appellant city of Columbus.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Karen A. Kolmacic,* for appellant Director of Environmental Protection.

STERN, J. The city of Columbus,

Department of Recreation and Parks ("city"), and the Director of Environmental Protection ("director"), appellants herein, have appealed from a final order of the Environmental Board of Review ("board of review"), which vacated a previous order of the director. The director's order, dated January 6, 1984, issued a permit to the city to install a force main, lift station, and building improvements to provide sewage service for land owned by the city, located in Delaware County.

In November 1983, pursuant to R.C. Chapter 6112, the city applied to the director for permission to construct a sewage disposal system to replace its current on-site treatment plant, which would serve city-owned property in Delaware County upon which the Columbus Zoo and the Zoo Amusement Park are located. This system would carry the waste water produced on city-owned land through a main running along Route 257 to Franklin County. From there, the proposed system would connect to existing city facilities. As noted above, the director issued the permit to install in January 1984.

The Board of Commissioners of Delaware County ("commissioners"), appellee herein, appealed the order to the board of review which conducted *de novo* hearings on June 4 and 5, 1984. On September 20, 1984, the board of review issued findings of fact and a final order, vacating the director's order, based upon noncompliance with R.C. 6112.02 and Ohio Adm. Code 3745-31-04. The bases for the board of review's decision may be summarized as follows:

(1) The director failed to notify the commissioners of the city's application for a permit as required by R.C. 6112.02; and

(2) The city's application failed to contain any data on the capacity and flow requirements of the Wyandotte Inn, in violation of Ohio Adm. Code 3745-31-04. Further, the director failed to consider this information prior to issuing a permit.

The city has raised two assignments of error:

"I. The Environmental Board of Review erred in finding the Director of Environmental Protection is required to comply with § 6112.02, *Revised Code,* where the application for permit to install a utility improvement is submitted by a municipality pursuant to Article XVIII, §§ 4 and 6 of the Ohio Constitution, notwithstanding the unauthorized use of said improvement by a private entity.

"II. The Environmental Board of Review erred in finding the Director of Environmental Protection failed to comply with Ohio Administrative Code § 3745-31-04 in granting a permit to the city of Columbus, to install a sewer line improvement where the evidence presented satisfies the criteria for granting such permit set forth in Ohio Administrative Code § 3745-31-05 and a reasonable factual foundation supports the director's action."

The director has raised three assignments of error:

"I. The Environmental Board of Review erroneously concluded that the director's issuance of a permit to install to the city of Columbus was unlawful for failure to comply with Revised Code § 6112.02 because the city of Columbus as a municipal corporation is specifically exempted from the operation of Revised Code § 6112.02.

"II. The Environmental Board of Review erred in determining that the director's issuance of a permit to install to the city of Columbus was unlawful for failure to include data and flow requirements of the Wyandot [*sic*] Inn in violation of O.A.C. 3745-31-04 because testimony adduced at the hearing established that the prooposed [*sic*] system is adequate to handle flow from the Zoo, the Zoo Amusement Park and the Wyandot [*sic*] Inn.

"III. The Environmental Board of Review erred in determining the director's issuance of a permit to install to the city of Columbus was unreasonable because there is a valid factual basis from which to conclude that the proposed system possesses adequate capacity to handle flow from the Zoo, the Zoo Amusement Park and the Wyandot [*sic*] Inn."

For purposes of discussion, we will combine the appellants' first assignments of error, each of which challenges the board of review's rulings regarding the applicability of R.C. 6112.02 to this proceeding. Relevant to the disposition of these assignments of error are the following provisions of the Revised Code:

R.C. 6112.01.

"As used in sections 6112.01 to 6112.05, inclusive, of the Revised Code:

"* * *

"(H) 'Person' means a person, firm, partnership, association, or corporation, *other than a* county, township, *municipal corporation,* or other political subdivision." (Emphasis added.)

R.C. 6112.02.

"* * * [T]he director of environmental protection, upon application by any *person* * * * may grant approval for general plans to such person for the construction and installation of a disposal system for the disposal of sewage * * * to serve any geographical area in one or more counties, * * * provided that said geographical area is not then being served by a disposal system for the disposal of sewage * * *.

"Upon receipt of any application, the director shall notify the board of county commissioners in any county in which any part of said geographical area is situated that such application has been filed. The board of county commissioners shall certify to the director, within thirty days after receipt of such notice, whether said geographical area is or is not then being served by a

disposal system for the disposal of sewage, industrial waste, or other wastes." (Emphasis added.)

Appellants contend the notice requirement delineated above is not applicable herein as the entity making the application (the city) is not a "person" as defined by R.C. 6112.01(H). It is their contention that the statute focuses upon the applicant for the permit, not upon the ultimate user of the proposed system. Further, they argue, even if the board of review's determination was correct, the appellee was not prejudiced by the director's failure to notify them of the filing of the application.

In its final order, the board of review found that the notice requirement applied as "the involvement of a private entity to any degree triggers the application of Section 6112.02, O.R.C." The board of review concluded that, because a privately owned restaurant (the Wyandotte Inn) was to be connected to the proposed system, R.C. 6112.02 and its notice requirements were applicable.

As correctly noted by appellants, the focus of R.C. 6112.02 is upon the applicant for the permit. It is that person or entity which will be responsible for the planning, construction, and operation of the sewage disposal system. Since the applicant herein is the city of Columbus, a municipal corporation, we cannot agree with the finding of the board of review that R.C. 6112.02 is applicable. The statute in question does not refer to the ultimate user of the proposed system but, rather, only the applicant for the permit. Accordingly, we hold that, where the applicant for a permit to construct and install a sewage disposal system is a municipal corporation, the Director of Environmental Protection is not required by R.C. 6112.02 to notify the board of county commissioners of an affected county that such application has been filed, even though the system may ultimately be used by an entity

other than the municipal corporation. The appellants' first assignments of error are sustained.

Parenthetically, we note that, even if the board of review were correct in its determination that R.C. 6112.02 was applicable to these proceedings, the failure of the director to give notice to the board of commissioners was not prejudicial. The record shows that the area in question was not currently served by an existing system. Therefore, the most the commissioners could do upon receiving notice of the city's application would be to certify that fact to the director; they could not veto or reject the application as only the director has that power.

Finally, in reference to the city's argument that constitutional provisions exempt the city from the requirements of R.C. 6112.02, we note that, because of our holding regarding the inapplicability of that statute to these proceedings, we need not decide the constitutional issue raised by the city. See *State, ex rel. Hofstetter,* v. *Kronk* (1969), 20 Ohio St. 2d 117, at 119 [49 O.O.2d 440], and cases cited therein.

The remaining assignments of error contest the board of review's conclusion that the evidence showed the sewage disposal system proposed by the city was inadequate to serve the properties in question. Appellants maintain that the director's decision to issue the permit was reasonable and lawful and that the board of review exceeded its statutory scope of review as defined by R.C. 3745.05, and *Citizens Committee* v. *Williams* (1977), 56 Ohio App. 2d 61 [10 O.O.3d 91].

In *Williams,* Judge (now Justice) Holmes, writing for this court, expounded upon the standard of review applicable to the board of review at 69-70:

"At this point, a remand to the EBR being necessary, we feel that it would be timely to further clarify what we believe to be the original appellate procedure of the EBR pursuant to statute. Although

upon a *de novo* hearing, pursuant to R.C. 3745.05, the board of review must, of necessity, make factual findings upon the factual issues presented, it is first necessary to define and delimit the factual issues to be determined upon appeal by the board.

"'* * * [T]he factual issue before the board upon appeal herein was not whether the permit should be granted. Rather, the factual issue to be determined was whether the action of the Director in granting the permit was unreasonable or unlawful. This determination is to be made from the totality of the evidence before the board upon the *de novo* hearing.

"Where the evidence demonstrates that the action taken (granting the permit) by the Director is reasonable and lawful — that is, the evidence reasonably supports the Director's action — the board must, in accord with R.C. 3745.05, affirm the Director even though it might have taken different action (denied the permit). The board initially does not stand in place of the Director upon appeal, and is not entitled to substitute its judgment for that of the Director, but is limited to a determination of whether the action taken by the Director is unreasonable or unlawful. Where the evidence demonstrates that it is reasonably debatable as to whether the permit should be granted, the board's duty is to affirm the Director, rather than merely to substitute its judgment for his. * * *

"'* * *

"'Unlawful' means that which is not in accordance with law. * * *

"'Unreasonable' means that which is not in accordance with reason, or that which has no factual foundation. * * * [T]he ultimate factual issue to be determined by the board upon the *de novo* hearing is whether there is a valid factual foundation for the Director's action and not whether the Director's action is the best or most appropriate action, nor

whether the board would have taken the same action."

Our standard of review may be found in R.C. 3745.06, which states, in part:

"The court shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"

The board of review concluded that the director's action in issuing a permit to install to the city was unreasonable and not supported by a reasonable factual foundation. It appears that the board based its decision upon evidence which demonstrated that a system designed to handle 748,000 gallons per day could not handle expected peak flows from the zoo, the park, and the inn of over one million gallons per day, and that any overflow in the facility would cause raw sewage to drain directly into the Scioto River.

Our review of the evidence leads us to conclude that the board of review failed, in considering the propriety of the director's action, to consider relevant testimony which tended to show the director's issuance of the permit was reasonable and lawful. As a result, the board of review's order is not in accordance with law and must be reversed.

The record shows that, while the current capacity of the system was indeed 748,000 gallons per day, modifications in the system could be made, without rebidding the project, to increase that capacity to a total of approximately 900,000 gallons per day. In addition, steps were being taken to eliminate the infiltration of storm water into the sewer system, which would reduce the flow anticipated from the zoo. The evidence showed that, by correcting this problem and providing storage tanks, the peak flows would be "dampened" to within the proposed system's capacity. Also, there was testimony that the water park had a permit to construct a surface sand filter which would reduce approximately 60,000 gallons of an estimated flow of 100,000 gallons per day from the park.

The record shows that the average peak flow from the zoo and the amusement park would be approximately 693,000 gallons per day. Approximately 60,000 gallons per day of this flow would be eliminated when the surface sand filter becomes operational. If the inn is connected to the system, its average peak flow would be 15,750 gallons per day. Subtracted from the zoo's total flow would be the storm water currently infiltrating the existing system, which the evidence showed would be eliminated once the source of the infiltration was discovered. The elimination of this infiltration was a condition of the permit granted by the director.

Thus, the evidence clearly shows that the system proposed by the city is designed to handle peak flows approximately fifty percent greater than those expected from the property in question. As a result, the board of review's conclusion, that the director's action in granting the permit was unreasonable and unlawful, was not supported by reliable, probative, and substantial evidence, and was not in accordance with law. The city's second assignment of error, and the director's second and third assignments of error, are sustained.

The city has moved for admission of additional evidence, pursuant to R.C. 3745.06, consisting of the affidavit of John Becker, the business manager of the Columbus Zoo. The city claims that this evidence was newly discovered and could not with reasonable diligence have

been discovered prior to the board of review hearing.

This motion is overruled. The motion was filed with this court just five days prior to oral argument, which did not give appellee sufficient time to respond to the matters contained therein. Secondly, the affidavit contains hearsay in addition to technical matters which would better be considered by the director or the board of review.

Accordingly, the assignments of error are sustained, and the city's motion is overruled. The order of the board of review is reversed and vacated, and this cause is remanded to the board with instructions to enter an order affirming the director's issuance of the permit to install.

*Motion overruled; judgment reversed; cause remanded with instructions.*

STRAUSBAUGH and MCCORMAC, JJ., concur.

STERN, J., retired Justice of the Supreme Court of Ohio, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.